Good morning, Your Honor. This is James Hines of the Hines Law Group, representing appellant the Women's Club of Hollywood, California. I would first like to address the court's question which was posed to us last week regarding remand and whether or not the court continues to have jurisdiction. It is the position of the Women's Club that those points in Judge Klausner's order at page 14, the remands of two provisions, are the tail on the dog in this appeal. And therefore, the Women's Club would agree to dismiss those remanded claims and proceed with the oral argument on the court issues today. With that, I'd like to reserve the balance of my time and let Mr. Hubbard address this preliminary question. Could I just ask whether we can just proceed with entering such a stipulation ourselves or whether we need to hold this appeal in abeyance while you dismiss in the bankruptcy court and come back to us? Or have you looked into what the procedure would be for what you just said you would be willing to do? I did not look into the procedure and I am not sure as I sit here today if Judge Klausner remanded to Judge Russell in the bankruptcy court and those issues are now properly seated before Judge Russell. What is clear is that when I looked at the court docket on the bankruptcy side, there is no indication that the issues are before Judge Russell and nor has he instituted any proceedings to hold further hearings on those remanded issues. Again, I would cede my time and then let Mr. Hubbard address the issue. I'm happy to step in. This is David Hubbard representing Jennifer Morgan. I did not know until just now that that was the position of Kurtz. I would say that I was prepared to be okay with remand, of course, because remand was the district court telling the trial court, hey, you better take another look at that 6400 because they weren't so sure that Morgan should be on the hook for it. I was also concerned as the court raised and I don't have an answer any better than Mr. Hines as to what that does to our standing before the court because I don't want to lose our place. I don't want to set this back two willingness to waive, abandon or dismiss. That claim is acceptable to us. So I think we should turn to the merits in the event that we think that we do have jurisdiction, but maybe you had one other threshold question, which is whether the parties have attempted mediation in this case. Mr. Hines, do you want to go first? I know. Thank you, Mr. Hubbard. I know that is Mr. Hubbard knows I have engaged with Jennifer Morgan in sustained settlement discussions for over nine months. Offers have been made. I don't believe that a mediation would be any more helpful than the private one on one conversations that I've had with Miss Morgan today. OK, I asked because we have very skilled circuit mediators who often can help people resolve disputes that don't seem resolvable. But if you've tried, it's certainly always voluntary on the party's part whether to participate in that. So it sounds like that's not worth pursuing. But if you change your mind, we certainly have circuit mediators available. So, OK, so we've used some of the time, but why don't we why don't we turn to the merits? Then, Mr. Hines, would you like to argue on the merits as well? Yes. Yes. You can hold this against my time, Your Honor. I just want to say that in preparing for this argument, I did not see that Mr. Hines had filled out the acknowledgement of hearing notice form. And in fact, I thought I had seen something prior that indicated he was submitting on the papers. I'm a little bit relying on my colleagues on that point, but it did affect my preparation. I prepared primarily for arguing our position on our appeal, and I believed that, and I think I reasonably believed, that the matter had been submitted on the papers as to Kurtz's appeal. Based on the fact that no notice of, pardon me, acknowledgement of hearing notice form had been submitted. I just wanted to state that, and I apologize for interrupting Mr. Hines. Let me address at least the second issue there. I acknowledge that we did not file the acknowledgement until today. Your staff did call and remind me that that was something that was still hanging out there, and we got it done today. There was, the record does not reflect that the Women's Club waived oral argument in any way, shape, or form on the issues raised by Kurtz in her appeal. So, with my remaining time, I'd like to address at least one of the issues that resulted from Judge Klausner's ruling, which is the subject matter of this appeal. And that point is the issue of bench trial. Counsel, I don't want to interrupt you before you get to the heart of your argument, but I have a point that I want to make sure you address. So, I have trouble finding anywhere in the bankruptcy court's order, oral findings, or the district court's written order, any specific determination that Ms. Morgan breached a fiduciary duty by arranging for the SCARPA loan. And as part of your argument on you get extra damages for having her breach the fiduciary duty by arranging for the SCARPA loan, I would be interested in having your point out to me where that breach finding was actually made by anybody. I appreciate that, and I noted in the briefing papers, Judge, that prior counsel spent a lot of time addressing that question, in part because Judge Russell did not enter written findings of fact and conclusions of law, but rather gave an oral determination of his opinion subject to some questioning back and forth with counsel. But the issue was addressed in the Kurtz brief, which is ID number 11126, docket entry 42, the reply brief of cross-appellant Heidecker's plan trustee and plaintiff, in which they cite to some statements made during the closing argument in which Judge Russell was questioned about just the issue of whether or not there was, in fact, a breach of fiduciary duty. And the conclusion is, based on the record, that the judge said at at least two or three occasions that yes, Ms. Morgan was a fiduciary because she signed the petition, signed the schedules, and held a position of trust with the debtor at the time the petition was filed, at the time that the SCARPA loan was first obtained, and that the court also found that while it wasn't a direct connection, the obtaining of a high-interest short-term SCARPA loan at a time when the club had little or no revenue was one of the supervised, one of the prevailing causes of the company having to go into bankruptcy to stop SCARPA from foreclosing out all of the real estate held by the club. Counsel, I'm sorry, Judge Block. Yeah, go ahead. I was just going to say my problem with this, counsel, is, you know, breach of fiduciary duty and you're seeking millions of dollars worth of damages. I mean, typically, we're, in order to proceed on that, you'd have actually somebody writing or saying, I find Ms. Morgan breached a fiduciary duty in arranging for the loan, but instead there's statements of a breach and she shouldn't have taken the 120,000 odd in proceeds, but I can't see anything where the bankruptcy judge explicitly found that she breached a fiduciary duty in arranging for the loan. Your Honor, again, I wish I could point you to the, because we don't have written findings, this is all going to come out of what the court said in colloquy in the post-trial. And again, I read through the briefs. I wish I could point you directly to the... Well, I could do that. Okay, thank you, Judge. I could do that because I had the same concerns that Judge Bannon has. There were no written specific findings, but there were findings that I think the bankruptcy judge did make on the record. ER-267, he says the following. The one thing that the testimony is clear, that for me, anyway, that there was not a board approval of the contract to pay Morgan. I think that's a finding in fact. He says also on that same page, there was testimony that at some point, if the club was actually able to pay, when to me that means not able because you borrowed the able to pay financially, that the money is coming in. And then at the same ER-267, he says, and therefore the money that came out of the $120,000, $216,073 was not properly dispersed. It seems to me that those are findings and it doesn't manifest itself in a written opinion, but it seems that we made findings. Are those findings for the audience? Sorry, what was the last thing you said? Are those findings clearly erroneous? I don't. The argument would be, yes, they're clearly erroneous based on the substance of the testimony documents all admitted during the course of the trial. He also says at ER-263, but as far as the scarf alone, I am satisfied that at the end of the day, there wasn't a board approval. Is there any question as to whether there was board approval or not? No, no, absolutely not. What the record shows is that all the other participants who were board members said there was no board approval and that the transaction with SCAPA was done by Ms. Morgan with the assistance of counsel for the debtor without board approval. So we have some findings that were made, albeit perhaps not in the format that we would like to have, but these are findings, I think, that the bankruptcy court judge made, and why should we not adhere to those findings? Well, I think you can adhere to the binding as to breach of fiduciary duty, but then the question becomes, what damages would result from that? Judge Russell took a very narrow view that the only damages the club could recover were those damages where Ms. Morgan took money for her own personal benefit. So we agree that there's a breach of fiduciary duty here. That was a finding that was determined by the bankruptcy judge, and the issue is what damages, if any, should flow from a breach of fiduciary duty, correct? That is the argument that the club was just to make. And what is your exact position in respect to that? I guess you want this to be set back, so there should be a discussion of damages, right? Yes. What we would like is a remand to Judge Russell with specific instructions that say, under California law, you can look beyond just the individual benefit given to Ms. Morgan to the damages caused to the club by the breach of fiduciary duty. Here, that would be obtaining the SCAPA loan, putting the club in the position where it had to repay that loan on a very short term basis at a time when it had insufficient revenue to even service the debt. Could I just ask, it seems that the bankruptcy court thought there was some kind of breach, but I'm not sure how we know that the breach the bankruptcy judge had in mind was getting the loan as opposed to perhaps insisting on the deed of trust for the $100,000 that then caused maybe the loan to be taken out. But there are various things that could be considered the breach here, and I'm not sure I've understood where you pointed to something that tells us what breach we're talking about here. Well, part of this is that what Judge Russell did below was to strike portions or strike the Pipe Declaration. And Don Pipe had been retained by Heider Kurtz to be his Rule 26 expert to do two things, to establish the amount of the loss and to establish causation between obtaining the SCAPA loan under the circumstances in which Morgan obtained it and that causing the filing of the bankruptcy. Would you argue that demanding the deed of trust and threatening to sue was a breach? Yes, I would have to conceive that. So isn't it possible that that's the breach that the bankruptcy judge had in mind? Well, it's unclear. As Judge Bennett pointed out, we don't have written findings of fact. And if maybe nothing else, I remand to Judge Russell to propose written findings of fact pointing to those portions of the record that support his findings would be the outcome that would be most judicious here. That would avoid all of this ambiguity on the issues that the court has focused on. Are we in a position on appeal to decide what breach is the relevant breach? Or is that something that has to be done in the bankruptcy court? We would take the position, the club would take the position that under California law and 9th Circuit law, this court can take a look at the massive excerpts of records and make that determination and not have to force us to go back on a remand to Judge Russell. So counsel, did you make that argument anywhere in your briefs that we should restate? Because I took your argument as assuming that the bankruptcy judge had found that obtaining the loan was a breach and the bankruptcy court and the district judge just got the damages wrong. As opposed to arguing that, no, he didn't really set it out right. And so you should, the evidence is there. So you yourself should determine as an undisputed matter of fact and law that there was a breach in obtaining the loan. Is there anywhere in your briefs you made that argument? Well, we made the argument as part of our opening brief, which is docket item 1423, that the court's evidentiary rulings, Judge Russell's evidentiary rulings can be reviewed for abuse of discretion. And that if these things are clearly erroneous, this court has the power then to correct them. So it may not be as clearly articulated as you want Judge Bennett, but that is certainly the sum and substance of what Heida Kurtz argued in her opening briefs. We have two alternatives. This court can make the determination based on the voluminous record brought to this court, or you can remand to Judge Russell with specific instructions to finish the job, do it right, do it in writing, which may result in another appeal at the end of this year. My guess would be your friend thinks that there are probably other alternatives beside those two. Yes, I see that my time is running out. I want to ask you one question if I may, all right? Now, yes, you may. So I wanted to be clear about one thing. Are you contending that just the fact that there was no authorization to enter into this board loan, that in itself constitutes a breach of fiduciary duty, or do we have to go beyond that? What is your position? My position is very clear. And this is what was argued in the trial briefs submitted by Heida Kurtz at the beginning of the Russell trial. The board did not act within its scope in obtaining that loan. That was done sui generis by Jennifer Morgan and her attorney. They signed the papers, they got the loan documents, they got the loan closed through escrow, and they took part of the proceeds themselves to pay for things that they wanted to have paid for. They put the club in a position where it had this hard money loan with a short runway to repayment at a time knowing that there was an insufficient amount of income. Are you saying that just the mere fact that there was no authorization to get board approval and that in itself is not sufficient to constitute a breach of fiduciary duty, that you need more than that? No. No, I think acting like that under those circumstances is a breach of fiduciary duty when Jennifer Morgan is president CEO of the club and she acted on her own without board approval to obtain this high money loan with a short reach we're talking about here. We have some choices could very well trigger what the damages might be. I don't know whether you have a position on that. I know you use your time, but maybe your adversary can address that. Yes, your honor. Our position is that would give rise to the broader scope of damages as argued in the briefing. The potential for 1.6 million dollars of harm caused to the club, not just a hundred thousand dollars, which was taken personally by Jennifer Morgan after the loan closed. So we've taken you over your time. I'll give you two minutes for rebuttal, but let's hear from Mr. Hubbard. Thank you, your honor. Thank you, your honor. How much time do I have at this point? Well, it has gotten a little bit confusing, but it looks like about 12 and a half minutes. Can you tell me when I'm down to about two minutes, please? I will try to do so. Yes, go ahead. Thank you. I would like to get right into the issue of standing, which was laid out in some level of minutiae in the brief, but I'll try to get right to it. Standing must be proven, not merely asserted or inferred, and standing must exist throughout the suit. And I take note that Mr. Hines has repeatedly represented that he is counsel for the Women's Club, but the real plaintiff here is Heida Kurtz, and she completely failed to establish standing at the trial court. Kurtz? So we have read your arguments about standing. I would be interested in hearing your arguments about the issues that Mr. Hines was discussing about what was the breach and what are the damages. Could you speak to those issues if we assume there is standing for the purposes of this question? Sure. I did want to get into the contract analysis, but I'll go to breach since that was just discussed and for some fluidity of argument. And again, speaking about the brief, our first brief lays out in detail from the a somewhat protracted process that did involve the Women's Club, did involve high-ranking members of the Women's Club, and laid out how the matter got to the trustee. Of course, the contract issues are necessarily intermingled with the analysis of the breach of fiduciary duty because what the board recognized in issuing the trustee to Morgan is that they owed her money under the contract. It's also undisputed in the evidence that the board approved a contract, but getting back to breach of fiduciary duty itself, there was never any finding at the trial court of negligence on Jennifer Morgan's part or fraud. And that's exactly why the discussion I just heard among you folks was guesswork. And that's not how you find someone liable for hundreds of thousands or millions of dollars. Why would it not have been a breach for her to in the right? And so that's why I say it's necessarily intermingled. Well, that does come down to the contract again. I understand why you're coming back to that. But didn't the contract say that, to the extent, say or imply, I know it might have been a verbal contract, to the extent there was a contract, didn't the contract anticipate that a condition precedent of payment would have been that the club was making money? Right. Not making money. See, that's part of the twist that the court employed. The phrase that the author, the employer, the person in power, meaning the club, the phrase they used is if money exists. And throughout employment law, it's a cliche that any ambiguity in a contract is interpreted against the person in power. Counsel, even if we were to assume that the contract was not parole, but instead was based on a writing and that the minutes were the writing, these minutes, the bullet point, a couple up from what you say, say based on her performance, borrowed money can't be used for operational costs. So why would we take only payable only if money exists as part of the contract using your interpretation, but ignore four bullet points above borrowed money can't be used for operational costs in deciding the terms of the contract, even if we assume this was a writing memorializing those terms. I would still say we're going outside the bullet points. And I would also say that's yet another ambiguous term, operational costs. So if it's an ambiguous term, if operational costs is an ambiguous term, if payable only, if money exists, is an ambiguous term. What's wrong with deferring to the fact finder to find that if there was a contract here, it could only come out of money other than borrowed money? I mean, why isn't that a perfectly normal fact finding? Well, we go through about a couple dozen pages of contract analysis to explain piece by piece how that how contract law unfolds. Don't you have to show that that finding was clearly erroneous? Isn't that our standard of review here? Well, the standard of review on the legal analysis is de novo. The standard of review on fact finding is clearly erroneous. That is correct. My group's judge made that finding. He said it could be ambiguous, but he clearly found that, you know, the money was to be paid when money exists. I know it's not a paragon of clarity, but it seems to be clearly that he made that finding. He didn't say, though. He didn't say if money exists, he changed it. And we provided case law to the court that showed no judges empowered to change a contract to benefit a party. And so by changing it from if money exists to money coming in, that's effectively changing it. So counsel, is it your position that the minutes are a written contract or is it your position that there was an oral contract between the women's club and your client? We believe that the minutes that have been judicially admitted in paragraph 39 of the and we're not talking about some cavalier piece of evidence. So counsel, I'm going to ask you to assume for the purposes of answering this question that we don't accept your judicial admission argument. So so then my question is, is it your position that there was a written contract and that basically the minutes are the written contract or is it your position that there was an oral contract? Or is it something else? I would probably combine the two, but I would say the minutes reflect a written contract that the way the board operates, the affirmation by the minutes becomes a written contract that reflects an oral contract. And and if I could if I could point to a couple matters in the record, EOR 859 and EOR 862 reflect that July 21, 2010 meeting and show 10 board members were present and the contract passed 8 to 2. And I don't think, I think that alone is very difficult to get around. When we on our side try to understand what the judge was doing, we were trying to figure out what witnesses was he following. And you got to witness Genovese, who affirmed the board minutes at EOR 77. So if we agree with you that this is essentially a written contract, you've already said several of these provisions are ambiguous. Under California law, isn't parole admissible to explain an ambiguous written contract? And isn't that what the trier of fact did here? I don't think they're that ambiguous. I'm saying that the party that tried to take advantage of an ambiguity that they created and taking if money exists is colloquially understood the way all of us live. As we all take out loans, we live off of loans. We, you know, some of us are lucky enough not to be back. We back up for a second. My apologies for interrupting, but that's what judges do. Are you taking issue with the finding by the bankruptcy judge that at the end of the day, there was not any board approval? And let's go back to the basic 100%. I couldn't disagree with that more. And I think all the evidence shows there was board approval. And I would point the court to this. Look at the fact that the board, the women's club honored the contract. If we were to disagree with you and find that there was a finding of fact that, you know, was not really erroneous that at the end of their day, as the bankruptcy judge concluded, there wasn't board approval. Do you think that that would constitute a breach of fiduciary duty? No, I think, and thank you for bringing me back, I don't think I quite finished my point on that. If there were a breach of fiduciary duty, it would have been Van Tassel. She was the president of the club and she was the one who made this offer to Morgan. So why is the fiduciary duty superior in Morgan than it is to Van Tassel? Morgan is the person effectively working for free because they're not honoring her contract. She's desperately trying to get compensation. We presented authority to the court that showed in those circumstances, you have got to honor the contract of employee. Wages are paramount in a contract circumstance. And I think the club recognized she's got a meritorious claim. I still find it compelling that the board was honoring her contract, August, September, October, they're paying her contract. And as we noted, it's replete in the record that the contract was acknowledged by board members. You asked me to give you a two-minute warning. You're at two minutes now. And if I can hold for rebuttal, I would like to do that. If I can. I think it would be better if you closed out now. I think we don't usually go back and forth more than once. And we've already done that here. So please go ahead. A few legal matters that there is no doubt that whatever uncertainty was created by the term, if money exists, it was created by the board and per civil code 1654, in cases of uncertainty, the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist. So that answers one of the earlier questions about, well, if it's ambiguity, let's leave it up to the judge. That's not what civil code 1654 says. In addition, California evidence code 631 indicates that when money is paid, such as it was owed. And bear in mind, it wasn't paid instantaneously. It was when the SCAPA loan came in. The SCAPA loan coming in, the parties recognized was money existing. And that's important. Honestly, I think going at this a little bit piecemeal, I'm better off just stopping at that point. And I thank you for hearing me out. Thank you, counsel. Mr. Hines, I think you have two minutes. I appreciate that, Your Honor. And based on the back and forth that we've had in questions, I will waive my two minutes of rebuttal unless the court has a question for me. Doesn't look like it. So thank you both sides for the helpful arguments. This case is submitted. Thank you very much. Thank you.
judges: Friedland, Block, Bennett